IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HARSHA FARRON CLARKE,
    Plaintiff,

v.                                  Case No.:

NICOLE LYONS, individually, and
GRADY JUDD, in his official capacity as
Sheriff of Polk County, Florida,
    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, HARSHA FARRON CLARKE, sues Defendants, NICOLE LYONS, individually, and GRADY JUDD, in his official capacity as Sheriff of Polk County, Florida, and alleges:

### INTRODUCTION

This case arises from the unlawful arrest of an innocent citizen who did everything a reasonable person could do to demonstrate that he was lawfully present and had committed no crime. In the early morning hours of May 21, 2026, Plaintiff Harsha Farron Clarke was lawfully parked on church property with the express permission of the church's pastor. When confronted by a Polk County Sheriff's deputy, Plaintiff calmly explained why he was there, produced written documentation identifying the pastor who had granted permission, and repeatedly urged the deputy to make a simple phone call that would immediately confirm his lawful presence. Rather than verify the readily available facts before escalating the encounter, the deputy detained Plaintiff, searched his person, seized his driver's license from his wallet, and arrested him for resisting

1

an officer without violence. Only after Plaintiff had already been detained and searched did the deputy finally contact the pastor, who confirmed exactly what Plaintiff had said from the beginning—that he had permission to be there.

The Fourth Amendment does not permit law enforcement officers to manufacture probable cause by refusing to investigate plainly exculpatory information that is immediately available to them. Nor does Florida law authorize an arrest simply because a citizen declines to comply with demands for identification during an unlawful detention unsupported by reasonable suspicion or probable cause. Nevertheless, Plaintiff was handcuffed, transported to jail, booked, and forced to defend himself against a criminal charge that the State Attorney ultimately refused to prosecute, issuing a No Bill after determining that prosecution was not warranted under the facts and circumstances of the case. Plaintiff now brings this action under 42 U.S.C. § 1983 and Florida law to recover for the unconstitutional deprivation of his liberty and the substantial damages he suffered as a result of Defendants' unlawful conduct.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367.

3. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Polk County, Florida, which is within the Middle District of Florida.

## PARTIES

4. Plaintiff, HARSHA FARRON CLARKE, is a resident of Florida.

5. Defendant NICOLE LYONS was, at all material times, a deputy sheriff employed by the Polk County Sheriff's Office.

6. Defendant Lyons is sued in her individual capacity for violating Plaintiff's clearly established constitutional rights.

7. Defendant GRADY JUDD is the Sheriff of Polk County, Florida.

8. Defendant Judd is sued in his official capacity for Plaintiff's state-law false arrest and false imprisonment claims.

9. At all material times, Deputy Lyons was acting under color of state law and within the course and scope of her employment with the Polk County Sheriff's Office.

## FACTUAL ALLEGATIONS

10. On May 21, 2026, at approximately 2:21 a.m., Deputy Lyons encountered Plaintiff at Cornerstone Church, located at 101 Cornerstone Church Place, Davenport, Florida.

11. Plaintiff was located near his white van in the church parking lot.

12. Plaintiff was lawfully present on the property.

13. Plaintiff had written documentation stating that he was permitted to park and remain on the church property overnight.

3

14. The written permission identified Pastor Tim King as the person who granted permission.

15. The written permission included contact information for Pastor King.

16. Plaintiff told Deputy Lyons that he had permission to be on the property.

17. Plaintiff repeatedly told Deputy Lyons to contact Pastor King to verify that permission.

18. Deputy Lyons did not first contact Pastor King before escalating the encounter.

19. Deputy Lyons instead demanded Plaintiff's identification.

20. Plaintiff stated that he was not doing anything wrong and that Deputy Lyons should call Pastor King.

21. Deputy Lyons claimed that Plaintiff "could be trespassing" or "stealing electricity."

22. Those claims were speculative.

23. Deputy Lyons had no statement from the property owner, pastor, employee, or any alleged victim claiming Plaintiff was trespassing.

24. Deputy Lyons had no statement from any alleged victim claiming Plaintiff was stealing electricity.

25. Deputy Lyons had readily available contact information for the pastor who could confirm Plaintiff's permission to be on the property.

26. Rather than make that simple verification before detaining Plaintiff, Deputy Lyons continued to demand identification.

27. Plaintiff eventually provided a State of Florida card with his name on it.

28. Deputy Lyons claimed that card was insufficient because it did not contain Plaintiff's date of birth.

29. Deputy Lyons then detained Plaintiff and placed him in her patrol vehicle.

30. Deputy Lyons searched Plaintiff and removed his wallet from his pocket.

31. Deputy Lyons located Plaintiff's Florida driver's license in the wallet.

32. After Plaintiff had already been detained and searched, Deputy Lyons contacted Pastor King.

33. Pastor King confirmed that Plaintiff was allowed on the property.

34. Despite that confirmation, Deputy Lyons arrested Plaintiff for resisting an officer without violence under section 843.02, Florida Statutes.

35. The alleged basis for the charge was Plaintiff's refusal to provide further identification during Deputy Lyons' investigation.

36. Plaintiff did not threaten Deputy Lyons.

37. Plaintiff did not flee.

38. Plaintiff did not use force.

39. Plaintiff did not physically obstruct Deputy Lyons.

40. Plaintiff did not commit any act that constituted resisting without violence.

41. Under Florida law, resisting without violence requires proof that the officer was engaged in the lawful execution of a legal duty and that the defendant's conduct obstructed or opposed that lawful duty. *C.E.L. v. State*, 24 So. 3d 1181 (Fla. 2009).

42. An officer may not create probable cause for resisting without violence by unlawfully detaining a person and then arresting that person for failing to comply with unlawful demands.

43. Florida law is clear that a detention must be supported by founded or reasonable suspicion of criminal activity. *Popple v. State*, 626 So. 2d 185 (Fla. 1993).

44. A mere hunch or speculative belief that a person "could be" trespassing is not enough.

45. Deputy Lyons' own affidavit shows that Plaintiff had documentation of permission, identified the pastor who granted permission, and repeatedly asked Deputy Lyons to call him.

46. Deputy Lyons' own affidavit further shows that Pastor King confirmed Plaintiff was allowed on the property.

47. The State Attorney's Office for the Tenth Judicial Circuit later issued a No Bill.

48. The State Attorney found that prosecution was not warranted based on the facts and circumstances of the case.

49. Plaintiff was deprived of his liberty, searched, arrested, booked, humiliated, and forced to suffer the consequences of a baseless criminal accusation.

50. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including loss of liberty, emotional distress, humiliation, embarrassment, reputational harm, and other damages.

6

## COUNT I
## 42 U.S.C. § 1983 – FOURTH AMENDMENT FALSE ARREST
## Against Defendant Nicole Lyons, Individually

51. Plaintiff realleges paragraphs 10 through 50.

52. The Fourth Amendment protects individuals from unreasonable seizures, including arrests made without probable cause.

53. A warrantless arrest without probable cause violates the Fourth Amendment.

54. Deputy Lyons arrested Plaintiff without probable cause.

55. At the time of the arrest, Deputy Lyons knew Plaintiff claimed permission to be on the property.

56. Deputy Lyons knew Plaintiff had written documentation identifying Pastor King as the person who granted that permission.

57. Deputy Lyons had access to Pastor King's contact information.

58. Deputy Lyons later confirmed that Plaintiff was allowed on the property.

59. Deputy Lyons had no probable cause to arrest Plaintiff for trespass.

60. Deputy Lyons had no probable cause to arrest Plaintiff for theft.

61. Deputy Lyons had no probable cause to arrest Plaintiff for resisting an officer without violence.

62. Because the underlying detention and investigation were not supported by lawful reasonable suspicion or probable cause, Plaintiff's refusal to provide additional information did not constitute resisting without violence.

63. A person may not be arrested merely for refusing to identify himself absent a lawful detention supported by reasonable suspicion. *Brown v. Texas*, 443 U.S. 47 (1979).

64. Florida law likewise requires lawful execution of a legal duty before a resisting charge may stand. *C.E.L.*, 24 So. 3d 1181.

65. Deputy Lyons' conduct violated Plaintiff's clearly established Fourth Amendment rights.

66. A reasonable officer in Deputy Lyons' position would have known that arresting Plaintiff under these circumstances was unlawful.

67. As a direct and proximate result of Deputy Lyons' actions, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendant Nicole Lyons, individually, for compensatory damages, punitive damages, attorney's fees and costs under 42 U.S.C. § 1988, and all further relief this Court deems just and proper.

### COUNT II
### 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEARCH
### Against Defendant Nicole Lyons, Individually

68. Plaintiff realleges paragraphs 10 through 50.

69. The Fourth Amendment protects individuals against unreasonable searches and seizures.

70. Deputy Lyons searched Plaintiff's person and removed his wallet from his pocket.

71. Deputy Lyons then searched Plaintiff's wallet and seized his Florida driver's license.

72. The search was not supported by probable cause.

73. The search was not supported by a lawful arrest.

74. The search was not justified as a lawful search incident to arrest because Plaintiff had not lawfully been arrested when Deputy Lyons searched him and removed his license from his wallet.

75. The search was not justified by officer safety because Deputy Lyons searched Plaintiff's wallet for identification, not for weapons.

76. Deputy Lyons' search of Plaintiff's person and wallet was unreasonable under the Fourth Amendment.

77. A reasonable officer in Deputy Lyons' position would have known that searching Plaintiff's person and wallet under these circumstances was unlawful.

78. Deputy Lyons' conduct violated Plaintiff's clearly established constitutional rights.

79. As a direct and proximate result of Deputy Lyons' unlawful search, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against Defendant Nicole Lyons, individually, for compensatory damages, punitive damages, attorney's fees and costs under 42 U.S.C. § 1988, and all further relief this Court deems just and proper.

## COUNT III
## 42 U.S.C. § 1983 – MUNICIPAL LIABILITY (*MONELL*)
## Against Defendant Grady Judd, in His Official Capacity as Sheriff of Polk County

80. Plaintiff realleges and incorporates by reference paragraphs 10 through 79 as though fully set forth herein.

81. At all material times, Defendant Grady Judd, as Sheriff of Polk County, was the final policymaker for the Polk County Sheriff's Office with respect to law enforcement policies, customs, training, supervision, discipline, and arrest practices.

82. The constitutional violations committed against Plaintiff were not merely the result of an isolated act by Deputy Lyons, but were caused by the customs, policies, practices, training, supervision, and ratification of the Polk County Sheriff's Office.

83. Upon information and belief, the Polk County Sheriff's Office has maintained policies, customs, or practices that inadequately train and supervise deputies regarding the constitutional limitations on investigatory detentions, demands for identification, warrantless searches, and arrests under the Fourth Amendment.

84. Upon information and belief, deputies employed by the Polk County Sheriff's Office are inadequately trained regarding the requirement that officers possess reasonable suspicion before compelling identification during an investigatory detention and probable cause before making a warrantless arrest.

85. Upon information and belief, deputies are further inadequately trained regarding their obligation to reasonably investigate readily available exculpatory

10

evidence before depriving a citizen of his liberty, including verifying information that would immediately dispel suspicion of criminal activity.

86. Had Deputy Lyons been properly trained, supervised, and instructed regarding these constitutional requirements, she would have verified Plaintiff's repeated assertion that Pastor Tim King had authorized his presence on the property before detaining, searching, and arresting him. Instead, Deputy Lyons detained Plaintiff, searched his person and wallet, obtained his driver's license, confirmed that Plaintiff had permission to be on the property, and nevertheless arrested him.

87. The policies, customs, practices, failures to train, and failures to supervise maintained by the Polk County Sheriff's Office demonstrated deliberate indifference to the constitutional rights of citizens with whom its deputies come into contact and were the moving force behind the deprivation of Plaintiff's constitutional rights.

88. As a direct and proximate result of these unconstitutional policies, customs, practices, failures to train, and failures to supervise, Plaintiff was unlawfully detained, searched, arrested, booked into jail, and suffered the damages alleged herein.

89. Plaintiff is entitled to recover compensatory damages, attorney's fees, costs, and all other relief authorized by 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant Grady Judd, in his official capacity as Sheriff of Polk County, award compensatory damages, attorney's fees and

11

costs pursuant to 42 U.S.C. § 1988, prejudgment and post-judgment interest as allowed by law, and grant such other and further relief as this Court deems just and proper.

## DAMAGES

90. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including:

a. loss of liberty;

b. unlawful detention;

c. unlawful search and seizure;

d. humiliation;

e. embarrassment;

f. emotional distress;

g. reputational harm;

h. loss of enjoyment of life;

i. expenses and other monetary damages; and

j. all other damages proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and award:

a. compensatory damages;

b. punitive damages against Defendant Lyons individually;

c. attorney's fees and costs under 42 U.S.C. § 1988;

d. taxable costs;

12

e. prejudgment and post-judgment interest where permitted by law; and

f. all further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: July 9, 2026

Respectfully submitted,

/s/ *Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

/s/ *Gavin B. Rollins*
GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892